**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| ODES FRANCIS THOMISON, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 08-4093-MLB |
| | ) | |
| HAWKER BEECHCRAFT CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion for summary judgment. (Doc. 46). This is an employment discrimination case filed by plaintiff in which he proceeds pro se. Plaintiff's allegations are that he was terminated and harassed in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621-634(b) ("ADEA"). The motion has been fully briefed and is ripe for decision. (Docs. 46, 50, 51, 52). Defendant's motion is granted for the reasons herein.

**I. Facts**[1]

Plaintiff began working for defendant on March 12, 1979, but was terminated on April 16, 1982, as part of a reduction in force. Plaintiff was then rehired on March 1, 1989. Defendant terminated plaintiff's employment on March 19, 2008. During his employment, plaintiff was an hourly compensated employee who was part of the

---

[1] Plaintiff's response does not properly controvert defendant's facts. Instead, plaintiff addresses each exhibit filed by defendant. Plaintiff's comments regarding the exhibits do not properly controvert defendant's statements of facts. Therefore, defendant's facts are deemed admitted for the purposes of this motion.

bargaining unit covered by the collective bargaining agreement (CBA) between defendant and the International Association of Machinists and Aerospace Workers ("IAM").

**A.  Attendance Policy**

Defendant has an attendance policy in place which provides 80 hours per year of earned time off (ETO) to an employee with ten years of service.  ETO is advanced on the employee's anniversary date and any unused time may be carried forward to the next year as long as the banked time does not exceed 600 hours.  An employee with ten years of service also earns three weeks of vacation per year.  When the ETO or vacation is properly used, an employee does not received an attendance infraction.  Employees also do not receive attendance infractions for approved FMLA leave.

Under the version of the attendance policy that was in effect from 2005 to the time of plaintiff's termination, an unexcused absence of more than four hours would result in four infractions. A full day absence results in two infractions when notification is given but escalates to four infractions if there is no notification.  If an employee incurs four infractions within a 180 day period, he would receive a Step 1 written reprimand.  If an employee incurs an additional four infractions in a 180 day period within one year of receiving a Step 1 written reprimand, he would receive a Step 2 written reprimand. An additional four infractions occurring in a 180 day period within one year following receipt of a Step 2 written reprimand results in a Step 3 reprimand, which is termination. Under the policy, termination also occurs if an employee was absent for five or more consecutive working days without a valid reason, even if the

-2-

absence was properly reported. Termination was also the consequence if an employee failed to properly notify the company of their absence for three consecutive working days, or if the employee failed to properly notify the company of their absence on three non-consecutive working days in a rolling twelve-month period.

Plaintiff knew how to properly request medical leaves of absence, if needed, as established by his prior requests in early 2007.

**B. Plaintiff's Absences prior to Termination**

Plaintiff's anniversary date for benefits purposes was October 6. Plaintiff received his ETO on October 6, 2007. He used ETO to cover absences on October 30, November 26, December 5 and 11, 2007, January 3, 7, 8, 9, 15, 16, 17, 22, 23, and 24, 2008. On January 21, 2008, plaintiff applied for leave under the Family Medical Leave Act (FMLA) for January 18 and 21, 2008, indicating that his mother was ill, and that he was her only son and caretaker. Plaintiff submitted a health care provider's certification, indicating that plaintiff's mother had severe rheumatoid arthritis. Defendant approved FMLA leave for those two days. Plaintiff then used available vacation time to cover absences on January 25, 28, and 29. Plaintiff was absent on January 30 and 31, and had no ETO available so he incurred four total attendance infractions for those absence. Having received four attendance infractions, plaintiff was issued a Step 1 written warning on February 1.

On February 1, plaintiff applied for FMLA leave for his absences on January 30, 31, February 1 and February 4 through February 29, indicating that the reason leave was needed was "Mom (only son)."

-3-

(Doc. 46, exh. 21). Plaintiff was absent on February 1 and 4 and received two attendance infractions for each absence. On February 4, plaintiff's supervisor attempted to notify plaintiff by telephone that he was being given a Step 2 written warning for his unexcused absences on February 1 and 4. On February 5, plaintiff received four attendance infractions because he was absent and did not timely report his absence. On that same day, defendant sent a request to plaintiff seeking a medical certification and stated that the current medical certification did not justify time off. Plaintiff was given fifteen days to provide supplemental information in support of his request for leave. Plaintiff was then absent on February 6, 7, 8, 11, 12, and 13. He received two attendance infractions for each absence. Plaintiff was again absent on February 14 and failed to report the absence which caused him to incur four additional attendance infractions. Plaintiff was issued a Step 3 on February 14. Plaintiff was not terminated because his FMLA request was pending.

Plaintiff missed work on February 15, 19, 20, and 21, and received two attendance infractions for each absence. Defendant received the additional medical certification on February 21, which indicated that plaintiff's mother, who resides in a nursing home, suffers from severe rheumatoid arthritis and severe degenerative arthritis. The certification indicated that plaintiff's mother would have these conditions for the remainder of her life. In the section where the health care provider can state whether the employee needs to be absent from work to care for a family member, Dr. Penner, the physician who oversees plaintiff's mother's medical care, stated that "Mr. Thomison tries to see his mother on a daily basis." (Doc. 46,

exh. 24). Dr. Penner indicated in his treatment notes his failure to understand why plaintiff needed to miss work due to his mother being in the nursing home. Dr. Penner's notes indicate that plaintiff reported that he had not been to see his mother for three weeks. (Doc. 46, exh. 25).

On February 21, defendant denied plaintiff's request for leave because his documentation did not indicate a need for time off. Plaintiff was then absent on February 22, 25, 26, 27, and 28. He received two attendance infractions for each absence, except for February 28, when he failed to report the absence, and incurred four infractions. Plaintiff returned to work on February 29. On March 5, plaintiff was notified that he was at a Step 3 reprimand with thirty-two additional infractions. Plaintiff refused to sign the disciplinary action.

On March 14, plaintiff resubmitted his request for FMLA leave from January 31 through February 29. Again, he submitted a health care provider certification from Dr. Penner which stated that plaintiff's mother resides in a nursing home, that she has certain chronic conditions, and that plaintiff attempted to visit her daily. On March 17, defendant denied the request for the final time, noting that the documentation did not indicate a need for time off.

Plaintiff was terminated on March 18. Plaintiff filed a union grievance and participated in a Step 1 hearing which was denied. Plaintiff then participated in a Step 2 hearing that was also denied. Plaintiff filed a complaint with the Equal Employment Opportunity Commission on February 26, alleging that he was harassed and terminated due to his age.

### C. Allegations of Hostile Environment

Plaintiff alleges that the age discrimination began in 2000 when he moved to Plant 2 from Plant 1 and worked with Sherry Foster, an hourly compensated employee working as a crew chief who reported to salaried managers. Crew chiefs are not considered management and cannot hire, fire, discipline, give performance evaluations, give raises, or take other steps that are reserved for management employees.

Plaintiff believes his first problem with Foster occurred when Foster notified Security that one of plaintiff's coworkers was under the influence of alcohol and sleeping in his car during work hours. The coworker was terminated. Plaintiff also testified that the termination of another coworker, Bob Woodard, showed that Foster was discriminating against him based on his age even though plaintiff never heard Foster say a discriminating comment about Woodard's age. Plaintiff believes Foster terminated Woodard because she "wanted to get rid of him." Plaintiff further believes that Foster harassed another employee, Linda Revard, because of her age. However, plaintiff did not hear Foster say anything derrogatory to Revard during her employment because he was "busy doing [his] own job." (Plaintiff's Depo. at 72).

From 2002 to 2008, when plaintiff worked with Foster, she never said anything derogatory to him about his age or anyone else's age. During the time when plaintiff worked with Foster, he does not know of any foreman, section manager, team leader, or anyone in a management or supervisory position saying anything derogatory about any employee's age. There is no record of plaintiff ever making any

-6-

complaints to defendant about being harassed due to his age.

**II.   Plaintiff's <u>Pro Se</u> Status**

Before analyzing defendants' motion for summary judgment, the court notes plaintiff is not represented by counsel. It has long been the rule that <u>pro se</u> pleadings, including complaints and pleadings connected with summary judgment, must be liberally construed. <u>See</u> <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991); <u>Hill v. Corrections Corp. of America</u>, 14 F. Supp.2d 1235, 1237 (D. Kan. 1998). This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction. <u>See</u> <u>Hall</u>, 935 F.2d at 1110. Liberal construction does not, however, require this court to assume the role of advocate for the <u>pro se</u> litigant. <u>See</u> <u>id.</u> Plaintiff is expected to construct his own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this district. <u>See</u> <u>id.</u>; <u>Hill</u>, 14 F. Supp.2d at 1237. Additionally, the court need not accept as true plaintiff's conclusory allegations because no special legal training is required to recount the facts surrounding alleged injuries. <u>See</u> <u>Hill</u>, 14 F. Supp.2d at 1237. Thus, the court is required to accept as true only plaintiff's well-pleaded and supported factual contentions. <u>See</u> <u>id.</u> In the end, plaintiff's <u>pro se</u> status, in and of itself, does not prevent this court from granting summary judgment. <u>See</u> <u>Northington v. Jackson</u>, 973 F.2d 1518, 1521 (10th Cir. 1992).

**III.  Summary Judgment Standards**

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined

here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

**IV. Analysis**

    **A. Termination**

To prevail on a discriminatory discharge claim under the ADEA, a plaintiff bears the ultimate burden of proving age was the motivating factor for the employer's decision to terminate him. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 143 (2000). "Also, as the Supreme Court recently clarified, 'the plaintiff retains the burden of persuasion [under the ADEA] to establish that age was the 'but-for' cause of the employer's adverse action.'" Johnson v. Interstate Brands Corp., No. 08-6387, 2009 WL 3583397, 2 (6th Cir.

Nov. 3, 2009) (quoting Gross v. FLB Fin. Servs., Inc., 129 S. Ct. 2343, 2351 (2009)).

A plaintiff can prove an age discrimination claim by presenting either direct or indirect evidence of discrimination. Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1136 (10th Cir. 2000). "Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." Danville v. Reg'l Lab Corp., 292 F.3d 1246, 1249 (10th Cir. 2002). Plaintiff asserts no direct evidence of age discrimination, and the court must therefore determine whether he has provided indirect evidence of discrimination by utilizing the McDonnell Douglas framework. Johnson, 2009 WL 3583397 at *2 (the Supreme Court's decision in Gross did not "definitively decide[] whether the McDonnell Douglas framework applies to ADEA claims"); Stone, 210 F.3d at 1137.

"In termination cases, a prima facie case of age discrimination ordinarily requires the plaintiff to show that he or she was: (1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person, although not necessarily one less than 40 years of age." Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1146 (10th Cir. 2008).

Defendant concedes that plaintiff has established the first and third elements. Defendant argues that plaintiff was not performing satisfactory work because he was not working at all between January 22 and February 29, 2008. Defendant further asserts that plaintiff has not proved that he was replaced by a younger person. Plaintiff has not responded to defendant's contentions.

-9-

The facts in this case do not lend any support to a finding that plaintiff was performing his job satisfactorily. Plaintiff was continuously missing work and, on occasions, did not even report to his employer that he was going to be absent. Further, plaintiff has failed to establish that his position was given to an individual who is younger than he is. Therefore, the court finds that plaintiff failed to establish a prima facie case of age discrimination.

Even if plaintiff had established a prima facie case, the court would sustain defendant's motion. Once a plaintiff has established a prima facie case, the burden shifts to the defendant to provide a legitimate non-discriminatory reason for its actions. Here, defendant has provided a legitimate reason for plaintiff's termination as he violated the absence policy and did not report to work for several days at a time.

The burden then shifts back to plaintiff to establish that defendant's reason is pretext for discrimination.

> A plaintiff may establish pretext by showing that the employer's proffered reason for acting adversely towards him is unworthy of belief. Plaintiff may also survive summary judgment by introducing affirmative evidence of a discriminatory motive. The plaintiff does not have the burden of proving a defendant's proffered reasons were false, or that a discriminatory factor was the "sole" motivating factor in the employment decision. Instead, the employee must show that unlawful intent was a "determining factor" and that the decision violates the statute.

Anderson, 514 F.3d at 1146.

Plaintiff's brief appears to assert that defendant's denial of his FMLA leave was fraudulent and that would lend support to his

claim.[2] After reviewing the documentation used to support plaintiff's leave, the court cannot conclude that defendant's decision in denying leave was a pretext for discrimination. Clearly, Dr. Penner did not see a need for plaintiff to take leave in order to care for his mother. Plaintiff's motion was under the care of the nursing home and Dr. Penner's notes state that plaintiff's absence from work was not necessary. Moreover, Dr. Penner's notes show that plaintiff did not even come to visit his mother during part of the time plaintiff requested leave. The court finds that defendant's denial of leave was justified based on the information it had when making the decision. Therefore, the denial of leave cannot establish pretext for discrimination.

Plaintiff has failed to establish that age was the 'but-for' cause of his termination as required in Gross. Defendant's motion for summary judgment on plaintiff's claim for wrongful termination is therefore granted.

**B. Harassment**

Plaintiff also asserts a claim under the ADEA for harassment. Plaintiff alleges that the treatment by Foster rose to the level of a hostile work environment. "For a hostile environment claim to survive summary judgment, the plaintiff must show that a rational jury could find that the workplace was permeated with discriminatory

---

[2] Plaintiff's brief is focused on the denial of FMLA leave. Plaintiff, however, did not assert a claim under the FMLA. (Doc. 1). Plaintiff's deposition testimony also acknowledges that he has not alleged a claim under the FMLA. (Plaintiff's Depo. at 172-73). Moreover, the pretrial order entered in this case only states a claim of discrimination under the ADEA. (Doc. 45 at 14). Once a pretrial order is entered, it controls the subsequent course of the litigation. D. Kan. R. 16.2(c).

-11-

intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Lebow v. Meredith Corp., 484 F. Supp.2d 1202, 1218 (D. Kan. 2007).

Plaintiff cannot meet this high burden. Plaintiff has admitted that he has never heard an age based remark from either Foster or any management level employee. Plaintiff's instances of alleged discrimination all focus on the terminations of other individuals, but plaintiff is unable to show that he heard any derogatory remarks made concerning these individuals. See, e.g., Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 190 (4th Cir. 2004) (no hostile environment claim where general culture at the workplace was one that tolerated racial discrimination and contained a glass ceiling for African-Americans because there was no evidence of racially offensive conduct directed at the plaintiff himself); Caver v. City of Trenton, 420 F.3d 243, 263 (3d Cir. 2005) (same, where plaintiff pointed solely to racial comments directed at other individuals); Moser v. Indiana Dep't of Corrections, 406 F.3d 895, 903 (7th Cir. 2005) (noting second-hand harassment is less objectionable than harassment directed at the plaintiff).

Defendant's motion for summary judgment on plaintiff's hostile work environment claim is granted.

## V.  Conclusion

Defendant's motion for summary judgment is granted. (Doc. 46). The clerk is directed to enter judgment in favor of defendant.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions

to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).

Any such motion shall not exceed five pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this __30th__ day of November 2009, at Wichita, Kansas.

> s/ Monti Belot
> Monti L. Belot
> UNITED STATES DISTRICT JUDGE